# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| SUSAN H. LAMB | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:13-CV-73 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| TENTH JUDICIAL DISTRICT DRUG | ) | |
| TASK FORCE, OFFICER DAVID JONES | ) | |
| individually and in his official capacity as an | ) | |
| agent for the Tenth Judicial District Drug Task | ) | |
| Force | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M

Before the Court is a motion to dismiss filed by Defendants the Tenth Judicial District Drug Task Force ("DTF") and Officer David Jones ("Officer Jones") (collectively, "Defendants") (Court File No. 2). Plaintiff Susan Lamb ("Plaintiff") filed a response in opposition to this motion (Court File No. 5), to which Defendants replied (Court File No. 8). Defendants argue Plaintiff's 42 U.S.C. § 1983 claim against the DTF and Officer Jones in his official capacity must fail because the DTF is an agency of the State of Tennessee, and therefore not a "person" within the meaning of § 1983. They also argue Officer Jones in his individual capacity is absolutely immune from Plaintiff's state law negligence claims as an employee of the state. Plaintiff argues the DTF receives funding and operational direction from a mixture of state and local entities, and should be considered a person under § 1983. The Court concludes the answers to these questions require consideration of materials outside the scope of Plaintiff's complaint. Accordingly, Defendants' motion will be **DENIED** (Court File No. 2).

# I.     BACKGROUND

The DTF is a joint operation of a number of Tennessee counties, including Bradley County, where the events giving rise to this case occurred. The complaint alleges Officer Jones, on January 17, 2012, appeared before a magistrate of the General Sessions Court in Bradley County and sought an arrest warrant for Plaintiff. Officer Jones claimed Plaintiff had purchased 10.08 grams of medications containing pseudoephedrine/ephedrine within a thirty-day period four months previously. Section 29-17-431 of the Tennessee Code Annotated, prohibits an individual from purchasing more than 9 grams of pseudoephedrine during a thirty-day period. The magistrate issued the arrest warrant. Plaintiff alleges Officer Jones did not conduct a sufficient investigation and that a "cursory examination" of Plaintiff's "history, life style, or activities" would demonstrate she was a law-abiding citizen.

On February 10, 2012, Plaintiff was arrested for possession of Immediate Methamphetamine Precursor at her home. She was taken to the Bradley County Justice Center, where she was booked, finger printed, and detained on bond. Her photo and the charges against her appeared in various publications such as "Just Busted" as well as websites that publish booking photos of East Tennessee arrestees. On February 13, 2012, Plaintiff appeared in Bradley County General Sessions Court where it was determined the case lacked merit. The State of Tennessee entered a nolle prosequi. The record of her arrest was expunged, but Plaintiff claims her information remains in the National Crime Information Computer System.

Nearly one year later, Plaintiff filed this complaint in Bradley Count Circuit Court pursuant to 42 U.S.C. § 1983 and the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 *et seq*. She claims her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth

Amendment rights were violated. She specifically alleges an unreasonable seizure, a violation of due process, and a violation of the Equal Protection Clause. She also claims Officer Jones' actions constitute malicious prosecution and false imprisonment under state common law. She alleges the DTF was aware its officers, including Officer Jones, were arresting citizens without conducting effective investigations and took no effort to correct their actions. She also alleges the DTF failed to train its officers or maintain constitutionally adequate standards for officer conduct. On March 11, 2013, Defendants removed to this court and filed the instant motion to dismiss.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678. "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

Plaintiff alleges a violation of her federal rights pursuant to § 1983, and alleges state law claims of malicious prosecution and false imprisonment. The Court will consider Plaintiff's federal claims and state claims separately.

### A.    Federal Claims

To state a general claim under 42 U.S.C. § 1983, a plaintiff must "demonstrate that a person acting under color of state law 'deprived [her] of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). The United States Supreme Court has recognized the exclusion of "States and arms of the State from the definition of person" under § 1983. *Howlett v. Rose*, 496 U.S. 356, 383 (1990) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1977).

4

Defendants argue the DTF constitutes a state entity. They assert Eleventh Amendment immunity and argue a state agency is not a "person" under § 1983. Because Officer Jones is an employee of a state agency, Defendants also seek dismissal of Plaintiff's § 1983 claim against Officer Jones in his official capacity. If, as Defendants argue, the DTF is a state agency, Plaintiff's § 1983 claims should be dismissed because a state is not a "person" under § 1983. *See Arizonans*, 520 U.S. at 69 (holding § 1983 actions do not lie against a state, and therefore Eleventh Amendment immunity does not prevent the § 1983 case against a state, rather § 1983 creates no remedy against a state).

Plaintiff argues, however, the DTF should not be considered a state agency. Plaintiff notes she has alleged the DTF is self-financing, has its own rules and regulations, and oversees its own personnel. Plaintiff has submitted a partial copy of the DTF's by-laws and suggests the Court should consider those materials. Although Plaintiff acknowledges these by-laws are "extrinsic" to the motion to dismiss, she suggests the Court should consider them regardless. Plaintiff also contends, at this point of the litigation, the Court cannot consider whether Officer Jones satisfies the statutory requirements to be considered a state employee, which include designation by the district attorney general, registration with the board of claims, and satisfaction of statutory criteria. Any such determination must be reserved for a Fed. Civ. P. 56 motion.

Defendants point to two published decisions from the other districts of Tennessee to establish the DTF is a state agency. In *Perez v. Wade*, 652 F. Supp. 2d 901 (W.D. Tenn. 2009), a court in the Western District concluded the Twenty-Fourth Judicial District Drug Task Force is a state agency for the purposes of § 1983. In that case, the plaintiff did not dispute that a drug task force is a state agency and even acknowledged the drug task force may be the wrong defendant. Accordingly, the

court concluded a drug task force could not be sued under § 1983.

Defendants also point to an earlier decision from the Middle District. In *Timberlake by Timberlake v. Benton*, 786 F. Supp. 676 (M.D. Tenn. 1992), the court concluded the Nineteenth Judicial District Drug Task Force was not a "person" under § 1983. Rather than concluding drug task forces are state agencies, the *Timberlake* court concluded they are comparable to police departments, which typically cannot be sued under § 1983 because they do not constitute separate legal entities. *See id.* at 682 (noting a tension between cases holding police departments may be held separately liable from a municipality and those holding they may not). The *Timberlake* began by describing the composition, funding, and authority of the drug task force at issue:

> The Task Force resembles a police department in that it is comprised of police officers and functions to enforce the law. However, it is distinguishable from the police departments discussed in the above cases in that the Task Force is not a department of any one city. It encompasses several counties and cities. It has a board of directors independent of any one city, and a unique source of funding. The authority for creation of the Task Force comes from two provisions of Tennessee law. Under T.C.A. § 12–9–104 (1987), as extended by T.C.A. § 6–54–307 (Supp.1991), any two or more public agencies or municipalities may enter into agreements for joint cooperation. In so doing, they may, but need not, create a separate legal entity. *Id.* at § 12–9–104(c)(2). Thus, it must be determined whether the parties to this mutual aid agreement created a separate legal entity in the 19th Judicial District Drug Task Force.

*Id.* at 682.

The court then considered the provisions of the agreement creating the drug task force. Pursuant to that agreement, each officer assigned to the drug task force remained an employee of the city or county assigning him and that city or county continued to pay his salary. Each municipal party maintained its own liability coverage, and would receive its contributed equipment in the event it decided to discontinue its participation in the agreement. The agreement did contain a clause requiring each party to indemnify the other parties in the event one of the drug task force employees

6

was sued for official conduct. The agreement even foresaw the possibility of a direct suit against the drug task force, stating "[t]his section [requiring indemnity] could be read to suggest the possibility of lawsuits brought against the Task Force itself, but could merely envision a lawsuit brought jointly against all of the separate cities and counties participating in the agreement." *Id.* at 683. The court, however, concluded "[u]ltimately, . . . that the creation of a legal entity capable of being sued should not be left to chance." *Id.*

> The law permitting cities and counties to enter into mutual aid agreements explicitly permits such agreements to function without the creation of a separate legal entity. Therefore, in the absence of clear indications that the Task Force is an entity, the Court will not imply its existence. The 19th Judicial District Drug Task Force is, therefore, a joint undertaking of several counties and cities and not a "person" amenable to suit under § 1983.

*Id.*

Far from deciding multi-county drug task forces constitute state agencies, the *Timberlake* court merely concluded a drug task force is not a separate, suable legal entity. In fact, the *Timberlake* court and the *Perez* court issued conflicting rulings regarding the employment status of a drug task force officer. The *Timberlake* court concluded a suit against a drug task force employee in his or her official capacity was effectively a suit against the municipalities or counties comprising the task force. Accordingly, "a suit nominally brought against [the] director of the 19th Judicial District Drug Task Force is in fact a suit against the cities and counties comprising the Task Force if [the director] functions as a final policymaker for the Task Force." *Id.* at 683-84. The court concluded, however, the "preferred method of suing a city or county . . . is to name it in the complaint." *Id.* at 684. Because the director's original city of employment was named separately, it was unnecessary to determine whether the director's official capacity subjects the city to suit. The plaintiff's official capacity claim was then dismissed on those grounds.

The *Perez* court, on the other hand, came to a different conclusion. The court relied on a state statute to conclude a drug task force officer should be considered a state employee:

> (c) Notwithstanding any other provision of law to the contrary concerning members of judicial district task forces relating to the investigation and prosecution of alleged drug violations, if a claim or suit should be filed against an individual and it is proven that:
> (1) At the time of the alleged incident the individual was a member of such task force who was properly certified to the board of claims pursuant to § 8-42-101(3)(C)[1]; and
> (2) The alleged liability arose out of the individual's activities as a task force member;
> then it shall be conclusively deemed that the individual was not an employee, agent or servant of a local government but was a volunteer to the state.

Tenn. Code Ann. § 8-7-110(c). The plaintiff argued, because her claim arose from a traffic stop rather than a drug violation, the defendants should not be considered state officials under this section. Based on § 8-7-110(c) and a handful of unpublished opinions,[2] the court rejected the

---

[1] Tenn. Code Ann. § 8-42-101(3)(C) provides:
"State employee" under this chapter and under title 9, chapter 8, also includes, as a volunteer, a person designated by the district attorney general of each judicial district as a member of a judicial district task force relating to the investigation and prosecution of drug cases. The district attorney general of each judicial district shall register only the names of properly qualified and designated task force members with the board of claims. Any member of such a task force designated by the district attorney general shall meet the criteria for qualifying as such a member pursuant to § 8-7-110 and as set forth in rules and regulations promulgated by the commissioner of finance and administration. The commissioner, after consultation with the department of safety and the Tennessee bureau of investigation, is authorized to promulgate rules and regulations to determine who shall qualify to be designated as a member of such judicial district task forces. Such rules and regulations may set criteria for qualifications of members and may set limits on the numbers of task force members from each district who may be registered. All such rules and regulations shall be promulgated in accordance with the provisions of the Uniform Administrative Procedures Act. Task force members are not eligible for workers' compensation benefits from the state of Tennessee.

[2] One of which, *Willis v. Neal*, No. 1:04 CV 305, 2006 WL 270288 (E.D. Tenn. Feb. 1, 2006), is discussed below. The other two cases cited in *Perez* are unpublished orders from the Western District. Defendants attached a copy of *Emerson v. Madison Cnty., et al.*, No. 94-1266 (W.D. Tenn. Mar. 13, 1995) to their reply.

8

plaintiff's argument the individual defendants were not state employees in her case.[3]

The *Perez* court relied in part on an unpublished opinion from this district. In *Willis v. Neal*, No. 1:04-CV-305, 2006 WL 270288 (E.D. Tenn. Feb. 1, 2006), *vacated in part on recons.*, 2006 WL 1129388 (E.D. Tenn. Apr. 24, 2006), the court considered official capacity suits against members of the Twelfth Judicial District Drug Task Force and concluded the official capacity suits were essentially claims against the drug task force. Based on Tenn. Code Ann. §§ 8-42-101(3)(C) and 8-7-110(c), "the Task Force is a state entity, and its members are state employees." *Id.* at *13. Because the claims were "actually claims against the State of Tennessee," they were "not claims properly brought under § 1983," and the court dismissed them. Additionally, although not cited by the parties, the Court located another unpublished decision from this district concluding drug task forces are state entities not amenable to suit under § 1983. *Jones v. Tennessee*, No. 1:09-cv-171, 2010 WL 1417876, at *5 (E.D. Tenn. Apr. 6, 2010) (citing *Perez* and *Timberlake*). *Jones* quotes *Perez*, which itself was quoting *Timberlake*, to conclude the drug task force is a state entity. It further cites *Perez* for the proposition "any money judgment against the Drug Task Force would be, in essence, a judgment against the state, allowing the state to invoke sovereign immunity." *Id.* (quoting *Perez*, 652 F. Supp. 2d at 905) (internal quotation marks omitted).

The Court agrees with Plaintiff the cited cases do not satisfactorily address the issues she has raised. The *Perez* court was not called to consider any of these issues, as the plaintiff in that case apparently failed to raise them. The *Timberlake* court, on the other hand, implicitly concluded the drug task force was not a state entity. However, it did not consider the effect of Tenn. Code Ann.

---

[3] The court, however, denied the motion to dismiss. The plaintiff invoked an exception to the Eleventh Amendment as articulated in *Ex Parte Young*, 209 U.S. 123 (1908), which allows for injunctive relief against state officers.

9

§§ 8-7-110 or 8-42-101(3)(C). It is unclear why the *Timberlake* court did not cite or consider either of these sections, which explicitly render properly appointed drug task force officers employees of the state. The relevant provisions of Tenn. Code Ann.§§ 8-7-110(c) and 8-42-101(3)(C) existed at the time of the *Timberlake* decision. *See* 1989 Tenn. Pub. Acts 63 § 5 (adding both these sections including § 8-42-101(3)(C), which was then designated as § 8-42-101(a)(3) with minor variation). Moreover, a provision of § 8-7-110, which also existed in similar form at the time *Timberlake* was decided, explicitly supersedes any interlocal agreement's liability provisions and considers drug task force officers volunteers to the state:

> To the extent any conflict exists concerning liability or jurisdiction of the members of any judicial district task force relating to the investigation and prosecution of, but not limited to, drug and violent crime cases between the provisions of this section and the provisions of any mutual aid or interlocal agreement entered into by a task force, the provisions of this section take precedence over any such agreement.

Tenn. Code Ann. § 8-7-110(d). The conclusion in *Timberlake* that "a lawsuit naming one of [the task force's] officials in his official capacity is tantamount to a suit against the entities making up the Task Force," 786 F. Supp. at 683, appears incorrect in the context of these statutes.[4] The Court finds the cited decisions, although providing important insight, are not sufficiently persuasive without further consideration of the circumstances in this case.

In order to determine whether the DTF is a "person" under § 1983 the Court must consider whether it is a state entity. Neither "States [n]or governmental entities that are considered 'arms of

---

[4] The court observed "[t]hose who would argue that an official capacity suit cannot be brought against a police official because the police department is not a distinct entity amenable to suit overlook the fact that the police official may be an official of the city or county which employs him." *Timberlake*, 786 F. Supp. at 683. As § 8-7-110(c) makes clear, however, an officer assigned to a task force is not to be considered an employee of the municipality that assigned him, but is to be considered a volunteer to the state. Under subsection (d), this is true regardless of the provisions of the interlocal agreement.

10

the state' for Eleventh Amendment purposes" are persons under § 1983. *Will*, 491 U.S. at 70.

Although an entity that is not an "arm of the state" for Eleventh Amendment purposes may still fail

to qualify as a "person" under § 1983, an entity that is an arm of the state is not suable under § 1983.

*Alkire v. Irving*, 330 F.3d 802, 812 n.7 (6th Cir. 2003). Thus, whether the DTF is an arm of the state

is a threshold question. To determine whether an entity constitutes an arm of the state, courts

consider

> (1) the State's potential liability for a judgment against the entity; (2) the language
> by which state statutes and state courts refer to the entity and the degree of state
> control and veto power over the entity's actions; (3) whether state or local officials
> appoint the board members of the entity; and (4) whether the entity's functions fall
> within the traditional purview of state or local government.

*Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010) (quoting *Ernst v. Rising*, 427 F.3d

351, 359 (6th Cir. 2005)). Although not the sole consideration, the most important factor a court

should consider is the state's potential for liability. *Id.* at 761.

The Court concludes it is not in a position to decide this question on Defendants' Rule 12

motion. The provisions of Tenn. Code Ann. § 12-9-104 provide local governments broad discretion

to construct entities and to determine the composition and legal status of those entities. Without

resort to the language of the agreement,[5] the Court cannot consider the liability of the state or the

composition of the DTF's board. Plaintiff's complaint does, however, allege that the DTF is "self-

financing" and establishes its own rules and regulations. The complaint also notes it is governed

---

[5] It is possible the Court could have considered a certified copy of the agreement as a public
record, if it so qualified. *Jones v. City of Cincinnati*, 521 F.3d 555, 561-62 (6th Cir. 2008).
However, the only document provided to the Court was a partial version of the DTF's by-laws and
policies manual. This may be the interlocal agreement, or it may be a separate document produced
by the Board of Directors for use by officers of the DTF. The Court declines to consider the by-laws
without the full version and opportunity for Defendants to dispute its accuracy or provide other
documents that may be relevant.

11

by a Board of Directors, although it does not discuss the composition of that board. The Court cannot answer this question without consideration of materials beyond the face of the complaint.

One possible rejoinder to the Court's conclusion is, regardless of whether the DTF is a state or local entity, it is simply not itself a suable "person" under § 1983. That is to say, a public entity may be held liable in official capacity suits, but only if "the public entity received notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). If the DTF is a municipal entity, the complaint should have listed the proper municipality or municipalities in the complaint, rather than simply listing the DTF. This is essentially the conclusion reached in *Timberlake*.

The rule in this district is that a law enforcement agency is not an appropriate defendant under § 1983. Rather, the municipality the agency represents should be sued. *See Rose v. Sevier Cnty.*, No. 3:08–cv–25, 2012 WL 6141000, at *3 (E.D. Tenn. Dec. 11, 2012) (concluding a sheriff's department is not a suable entity under § 1983) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding a police department is not an entity which can be sued under § 1983)). The *Timberlake* court cited an Eastern District case that concluded that a police department was a suable entity. *See Kennibrew v. Russell*, 578 F. Supp. 164 (E.D. Tenn. 1983). However, that decision conflicts with other published Eastern District cases, *Bradford v. Gardner*, 578 F. Supp. 382, 383 (E.D. Tenn.1984) ("[T]he Sheriff's department itself is not a suable entity under Section 1983 . . . ."), and "no subsequent Tennessee district court has adopted [*Kennibrew*'s] holding, and [both the Western and Middle Districts of Tennessee have] specifically rejected it." *McKinney v. McNairy Cnty.*, No. 1:12–cv–01101–JDB–egb, 2012 WL 4863052, at *3 (W.D. Tenn. Oct. 11, 2012) (quoting *Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *1 (M.D. Tenn. Aug. 25, 2010) ("It appears that, since *Matthews*, federal district courts in Tennessee

12

have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit.")).  In point of fact, the Court could not locate a single subsequent case from the Eastern District citing *Kennibrew*.

However, the cases concluding law enforcement agencies are not appropriate defendants under § 1983 rely on the conclusion a police department or sheriff's department is not a separate legal entity under state law.[6]  *See Matthews*, 35 F.3d at 1049 ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.") (citing *Brown v. Marshall Cnty.*, 394 F.2d 498 (6th Cir. 1968) (concluding a county is suable under § 1983 because under Kentucky law it is a "quasi municipal corporation") (internal quotation marks and citation omitted); *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502 (W.D. Ky. 1990) (concluding the Jefferson County Fiscal Court and Judge Executive are not legal entities that can be sued);  Ky. Rev. Stat. Ann. § 95.010(e) (defining "police department" as

---

[6] Pursuant to Fed. R. Civ. P. 17(b), for parties that are not individuals or corporations, their capacity to be sued is determined "by the law of the state where the court is located."  One exception to this rule is "a partnership or other unincorporated association with no such capacity [to be sued] under that state's law[, which] may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws."  Fed. R. Civ. P. 17(b)(3)(A).  Some courts have concluded this rule precludes a court from holding an organization may not be sued as a separate entity under state law.  *See Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 841-42 (N.D. Ohio 2011).  However, many courts do not extend this exception to "governmental units" and determine a government entity's capacity to be sued under the law of the state. *See Dean v. Barber*, 951 F.2d 1210, 1214 n.4 (11th Cir. 1992) ("Nothing in the language of Rule 17(b) or in the early case law that led to the adoption of Rule 17, warrants an extension of Rule 17(b) to government units.") (internal citation omitted); *Haines v. Metro. Gov't of Davidson Cnty.*, 32 F. Supp. 2d 991, 994 (M.D. Tenn. 1998) ("Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of a governmental corporation to be sued in federal court is governed by the law of the state in which the entity was organized."); *see also Lundquist v. Univ. of S.D. Sanford Sch. of Med.*, 705 F.3d 378, 381 n.2 (8th Cir. 2013) (noting without deciding the issue that "the few courts to consider the issue have concluded" Rule 17(b)(3)(A) does not extend to governmental units) (quoting *Dean*, 951 F.2d at 1214 n.4).

13

"the officers, policemen, and clerical or maintenance employees, including the chief of police")); *see also Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) ("[U]nder Michigan law, Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit."). Municipalities in Tennessee may create a separate legal entity when constructing drug task forces pursuant to Tenn. Code Ann. § 12-9-104, which outlines the requirements for such an agreement, including the requirements for an agreement that does not create a separate entity.[5] *See* Tenn. Code Ann. § 12-9-104(c) ("Any [interlocal] agreement shall specify . . . [t]he precise organization, composition and nature of any separate legal or administrative entity or entities created thereby . . . ."); *id.* at § 12-9-104(d) ("In the event that the agreement does not establish a separate legal entity or entities to conduct the joint or cooperative undertaking, the agreement shall [contain additional enumerated provisions]."). Without resort to the agreement, the Court simply cannot answer the questions posed by Defendants' motion. The Court must therefore **DENY** Defendants' motion with respect to Plaintiff's § 1983 claim against the DTF.

With respect to Plaintiff's § 1983 claim against Officer Jones, the Court agrees the determination whether Officer Jones qualifies as a state employee under Tenn. Code Ann. § 8-42-101(3)(C) requires consideration of materials outside the confines of Plaintiff's complaint. Section 8-42-101(3)(C) requires designation by the district attorney general, registration with the board of claims, and satisfaction of other statutory criteria. Whether Officer Jones satisfy those criteria is not

---

[5] Notably, local governments are also empowered to enter mutual aid agreements by Tenn. Code Ann. § 6-54-307. However, § 6-54-307 does not appear to provide for the creation of a separate entity, as § 12-9-104 does. It is therefore unlikely that this section was relied upon by the municipalities creating the DTF. However, the Court cannot make that determination without consideration of the agreement.

a question the Court can answer at this point. Accordingly, the Court will **DENY** Defendants' motion to dismiss Plaintiff's § 1983 claim against Officer Jones in his official capacity.[6]

## B. State Claims

Plaintiff alleges state law claims of both malicious prosecution and false imprisonment against Defendants. Plaintiff also alleges negligence and deliberate indifference on the part of the DTF. Defendants seek dismissal of these claims against the DTF because it is a state agency and accordingly the TGTLA is inapplicable. *See Tenn. Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975) ("[I]t is clear from reading the entire Act that the references therein are to local governmental entities, their agencies and employees."); *Lucas v. State*, 141 S.W.3d 121, 126 (Tenn. Ct. App. 2004) ("[The TGTLA] is not and never has been applicable to the State of Tennessee or its agencies and departments."). Because the Court cannot determine at this point whether the DTF constitutes a state entity, the Court will **DENY** Defendants' motion to dismiss Plaintiff's state claims against the DTF.

Defendants also seek dismissal of Plaintiff's state claims against Officer Jones for negligent acts. Defendants argue Officer Jones is absolutely immune from suit for negligent acts as a state employee.[7] *See* Tenn. Code Ann. § 9-8-307(h) ("State officers and employees are absolutely

---

[6] From the Court's reading of Defendants' motion, they do not seek dismissal of Plaintiff's § 1983 claims against Officer Jones in his individual capacity. Even had Defendants sought dismissal, the Court would deny that motion for the reason it otherwise denied Defendants' motion.

[7] From the Court's reading of Defendants' motion, they do not seek dismissal of Plaintiff's intentional tort claims against Officer Jones. Moreover, it is unclear what negligence claim against Officer Jones Defendants seek to dismiss. At best, Plaintiff claims Officer Jones' actions "were taken both negligently and with specific intent to deprive the Plaintiff" of her constitutional rights. Plaintiff may be simply asserting both an intentional and a negligent violation of § 1983. Plaintiff may, however, be alleging a separate action of negligence based on Officer Jones' conduct. The Court need not decide that matter for the purposes of this motion.

immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. For purposes of this chapter, 'state officer' or 'employee' has the meaning set forth in § 8-42-101(3).").  Because the Court agrees with Plaintiff whether Officer Jones qualifies as a state employee under Tenn. Code Ann. § 8-42-101(3)(C) requires consideration of materials beyond her complaint, the Court will **DENY** Defendants' motion to dismiss Plaintiff's state claims against Officer Jones.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendants' motion to dismiss (Court File No. 2).

**An order shall enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**